## RAILROAD COMPANY *v.* UNITED STATES.

1. A party claiming a credit which by reason of his laches was not presented to the accounting officers of the treasury and disallowed in whole or in part by them cannot set it up in an action brought by the United States against him for the recovery of a debt.

2. By the act of July 13, 1866 (14 Stat. 135, sect. 103 of the act of 1864, as amended), "every . . . corporation owning . . . any railroad . . . engaged or employed in . . . transporting the mails of the United States upon contracts made prior to Aug. 1, 1866, shall be subject to and pay a tax of two and one half per cent of the gross receipts" from such service. In a suit against a railroad company to recover said tax no express contract for carrying the mails was proved, but it appeared that the company had been carrying them, and that the services for which it had been paid commenced before Aug. 1, 1866, and continued without interruption until Jan. 1, 1870. *Held*, 1. That the law implies that a contract was entered into prior to Aug. 1, 1866. 2. That the company is liable for that tax.

3. A railroad company paid, Aug. 1, 1870, to the holders of its bonds $61,495 as interest then due. *Held*, that the company was liable to the United States to a tax of five per cent on that amount.

4. The "tax of two and one-half per centum on the amount of all interest or coupons paid on bonds or other evidences of debt issued and payable in one or more years after date," by any railroad company, is a tax on the interest, not as it accrues, but when it is paid.

ERROR to the Circuit Court of the United States for the Eastern District of Wisconsin.

This is an action by the United States against the Western Union Railroad Company, a corporation of Wisconsin, to recover certain internal revenue taxes alleged to have accrued from Aug. 1, 1862, to Dec. 31, 1871. The company filed a general denial of the allegations of the complaint, and in addition thereto set up a counter claim.

The plaintiff, to maintain the issue on its part, introduced statements from the books of the defendant, which were admitted to be true, from which it appeared that the gross amount of all receipts of the company for the transportation of passengers between Aug. 1, 1862, and July 1, 1864, was $190,863.68; that its entire gross receipts from and after June 30, 1864, until Aug. 1, 1866, were $1,427,685.36 ; that its gross receipts for fares and carrying the mails, from Aug. 1, 1866, until Jan. 1, 1870; were $605,770.09, and that of the said last amount $61,676.01 were for carrying the mails, and $544,094.08 for fares.

It further appeared from the books of the company, that there were no net earnings subject to tax in this suit. There were entries crediting the agent of its bondholders with interest on bonds of the Northern Illinois Railroad, from July 1 to Dec. 31, 1864, the sum of $38,876.00, and from Jan. 1 to Dec. 31, 1865, a like credit to him for interest on said bonds, $33,648.54; and in the year 1866 a like credit of $24,372.25 ; upon which the plaintiff claimed that it was entitled to a tax of five per cent. It further appeared from said books that interest on the bonded debt to the amount of $61,495.00 fell due Aug. 1, 1870, and was paid by the company on or after that date; that interest to the amount of $53,767.65 on the bonded debt became payable Feb. 1, 1870, and was paid on or after that date ; and that $52,929.37 became due and payable on the bonds Aug. 1, 1871, and was paid on or after that date by the company.

The plaintiff, to further maintain the issue on its part, offered to show by said books that, Feb. 1, 1872, the further sum of $52,423.71 became due and payable on the said bonds, and was paid on or after said date, to which the defendant

objected on the ground that said evidence was incompetent and immaterial. The court overruled the objection and the defendant excepted. The plaintiff then showed that the sum of $52,423.71 so became due and payable Feb. 1, 1872, and was paid on or after that date, and claimed and insisted that the plaintiff was entitled to a tax of two and a half per centum on five-sixths of said amount.

The plaintiff then rested, and the defendant called as a witness one Ranney, who testified that he was secretary and treasurer of the company and had charge of its books and papers, and he as their bookkeeper had charge of the books of said company from Feb. 22, 1866; that he had examined the company's books, papers, and files, and found therein no reference to any contract for carrying the mails; that so far as he could ascertain from his examination no such contract was ever made, and that he had no knowledge thereof.

He further testified that that portion of the road between Freeport and Savannah was known and called as the Northern Illinois Railroad, and that the bonds mentioned as Northern Illinois Railroad bonds were issued on that road; that said road was a part of the road operated by the Racine and Mississippi Railroad, and that it was consolidated with the Western Union Railroad in January, 1866, and that all of the earnings of said road for the whole time mentioned in the declaration are included in the books of the company; and that on the consolidation of the said company with the Western Union Railroad Company the latter company succeeded to all its rights, privileges, franchises, and liabilities. That the entries in the books of interest paid on bonds of Northern Illinois Railroad, to wit, $38,876, $33,648.54, and $24,372.25, were made to show the relative rights of the bondholders of the different portions of the entire road, and that in fact no interest was ever paid upon such bonds, except the sum of $2,360.67, and that said accounts still remain open and unsettled upon the books, and that there never were any net earnings of said company to pay interest on said bonds, and that no such interest was ever paid; but at the time of the change of management, July 1, 1869, he understood that the said bonds were arranged or settled, but in what way he was unadvised.

The defendant then introduced in evidence vouchers for taxes paid by it, amounting to $58,832.23, and they show the payments made from month to month to the collector of internal revenue for the district in which the defendant's office was located, including taxes on account of receipts for transportation of mails.

The defendant also offered and read in evidence in addition thereto a voucher in the words and figures following, to wit:—

" ( *Official.* )

" Treasury Department,
" Office of Internal Revenue,
" $3,866.66.]          Washington, Nov. 7, 1865.

" Rec'd from Northern Illinois Railroad Company, by the letter of first instant, 3,866.66 dollars in certificate of deposit 689, issued by First National Bank, Milwaukee, on account of internal revenue tax on interest on bonds.

" C. H. Parsons,
" *Cashier Internal Revenue.*
" *Treasurer Northern Illinois Railroad Company, Racine, Wis.*"

"The First National Bank of Milwaukee,
" Milwaukee, Wis.
" $3,866,66.]          Milwaukee, Nov. 1, 1865.

" I certify that The Northern Illinois Railroad Co. has this day deposited to the credit of the Treasurer of the United States thirty-eight hundred sixty-six $\frac{66}{100}$ dollars, on account of internal revenue for taxes on coupons, for which I have signed triplicate receipts.

" No. 689.

" H. H. Camp, *Cash'r.*

(Across the face :)  " Triplicate.

" This will be retained by the depositor for his own use and security.

" 1865, November 1st, Government tax.

" To cash, $3,866.66.

" Amount paid this day by dr'ft on N. Y. to T. J. Emerson, coll., for tax on coupons rem'ning due Oct. 1, '63, to Aug. 1, '65.—W. V. B.

| | |
|---|---:|
| "Aug. 1, 1865. Tax . . . . . . . . . . | $666 66 |
| April 1,  „         „       . . . . . . . . . . | 1,000 00 |
| Oct. 1, 1864.   „       . . . . . . . . . . | 1,000 00 |
| April 1,  „         „       . . . . . . . . . . | 600 00 |
| Oct. 1, 1873.   „       . . . . . . . . . . | 600 00 " |

The defendant then asked that it should be credited in this suit as against the claims proven by the plaintiff the said amount of $3,866.66 as mentioned in said voucher, but the court being of opinion that no interest was, in fact, ever paid on said bonds of the Northern Illinois Railroad Company, no tax was ever due or payable thereon, but inasmuch as said $3,866.66 had been paid on account of such tax, the defendant was not entitled to have credit allowed therefor in this suit. To which ruling the defendant excepted.

The defendant further requested the court to rule and decide that the plaintiff was not entitled to a tax of two and a half per cent upon the said $61,676.61 received by the company for transportation of the mails from July 1, 1866, to Jan. 1, 1870, but the court refused to do so, and decided that, although there was no evidence of a contract bearing date prior to Aug. 1, 1866, and no proof of an express contract, yet as the mails were carried and compensation received therefor the law would imply a contract, and therefore that the plaintiff was entitled to said tax on that amount; to which ruling and decision the defendant excepted.

The defendant further requested the court to decide that the plaintiff was not entitled to a tax of five per cent upon the amount of $61,495.00, the amount of interest paid on the bonds of the company on or after the first day of August, 1870, but that a tax of only two and a half per cent was due thereon; but the court refused so to decide, but on the contrary decided that the plaintiff was entitled to a tax thereon of five per cent; to which ruling and decision the defendant also excepted.

The defendant further requested the court to decide that the plaintiff was not entitled to a tax of two and a half per cent on five-sixths of $52,423.71, the amount of interest paid on the bonds of the company on and after Feb. 1, 1872; but the court then and there refused so to decide, but decided that the plaintiff was entitled to said tax of two and a half per cent; to which ruling and decision the defendant excepted.

The case having been tried without the intervention of a jury, the court below rendered judgment in favor of the United States for $5,933.70. The company thereupon sued out this writ, and assigns for error that the court erred, —

1. In refusing to allow the sum of $3,866.66, paid Nov. 7, 1865, by the Northern Illinois Railroad Company, to be credited to the account of the defendant.

2. In deciding that a tax of two and a half per cent was due the plaintiff on the sum of $61,676.61, received by the defendant for transportation of the mails from July 1, 1866, to Jan. 1, 1870.

3. In ruling that a tax of five per cent was due plaintiff upon the amount of $61,495 of interest paid on the bonds of the company on or after Aug. 1, 1870.

4. In admitting evidence to show that the sum of $52,423.71 became due and payable for interest on the bonds of the defendant, Feb. 1, 1872, and that the same was paid.

5. In deciding that a tax of two and a half per cent was due the plaintiff on five-sixths of the amount of interest paid on its bonded debt Feb. 1, 1872.

*Mr. John W. Cary* for the plaintiff in error.

*The Solicitor-General, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The different assignments of error in this case will be considered in their order.

1. As to the claim for a credit of $3,866.66 on account of taxes erroneously assessed and collected, Nov. 7, 1865.

Sect. 951 of the Revised Statutes provides that "in suits brought by the United States against individuals, no claim for a credit shall be admitted upon trial, except such as appear to have been presented to the accounting officers of the treasury, for their examination, and to have been by them disallowed in whole or in part," save under certain circumstances not material to this case. Sect. 3220 of the Revised Statutes authorizes the Commissioner of Internal Revenue, "on appeal to him made, to remit, refund, and pay back all taxes . . . that appear to be unjustly assessed, or excessive in amount, or in any manner wrongfully collected."

It does not appear that this claim was ever presented to the accounting officers of the treasury for allowance, on appeal or otherwise, or that it has ever been disallowed. For this rea-

son, notwithstanding its apparent equity, the credit was properly refused in this suit. *Halliburton* v. *United States*, 13 Wall. 63 ; *United States* v. *Giles*, 9 Cranch, 212.

2. As to the tax of two and a half per cent on the amount received for the transportation of mails between July 1, 1866, and Jan. 1, 1870.

By the act of July 13, 1866 (14 Stat. 135, sect. 103 of the act of 1864 as amended), " every . . . corporation owning . . . any railroad . . . engaged or employed in . . . transporting the mails of the United States upon contracts made prior to Aug. 1, 1866, shall be subject to and pay a tax of two and one half per cent of the gross receipts " from such service.

No express contract for carrying the mails was proven, but since the service for which the compensation was paid began before August 1, and was continued without interruption for the whole term in question, the court below implied a contract prior to that time. This, we think, was right. Had payment been refused and suit brought against the United States in the Court of Claims, to recover for the service rendered, there could be no doubt about the right to recover, notwithstanding the jurisdiction of that court is confined to suits on contracts (*Salomon* v. *United States*, 19 Wall. 17) ; and this not alone because the service had been rendered, but because it is to be presumed that when the company commenced the transportation it had been agreed that payment should be made for what was done.

3. As to whether taxes are payable on interest falling due Aug. 1, 1870, at the rate of five per cent or two and a half per cent.

The ruling of the court below on this point was in accordance with our decisions in *Stockdale* v. *Insurance Companies*, (20 Wall. 323), and *Railroad Company* v. *Rose*, 95 U. S. 78.

4. As to the tax on interest due and payable Feb. 1, 1872.

The act of 1870 (16 Stat. 260, sect. 15) provided " that there shall be levied and collected for and during the year 1871 a tax of two and one half per centum on the amount of all interest or coupons paid on bonds or other evidences of debt issued and payable in one or more years after date, by any " railroad company, " and on the amount of all dividends of

earnings, income, or gains hereafter declared," "whenever and wherever the same shall be payable, . . . and on all undivided profits . . . which have accrued and been earned and added to any surplus, contingent, or other fund."

The interest in this case was neither payable nor paid in 1871, and as the tax is not leviable or collectible until the interest is payable, we see no way in which the company can be charged on this account. The tax is not on the interest as it accrues, but when it is paid. No provision is made for a *pro rata* distribution of the burden over the time the interest is accumulating, and as the tax can only be levied for and during the year 1871, we think, if the interest is in good faith not payable in that year, the tax is not demandable, either in whole or in part.

There is no question here of earnings, for the finding is not as to what was earned by the company during the year 1871, but as to what was paid in 1872 on account of interest then for the first time falling due. We are aware that at the present term we held, in *Railroad Company* v. *Collector* (100 U. S. 595), that the tax levied under the act now in question was essentially a tax on the business of the corporation, and that in order to secure its payment it was laid on the subjects to which the earnings were to be applied in the usual course of business; but as this tax could not be levied until 1872, and there is no · finding of any earnings in 1871, we see nothing to be taxed under that rule. In *Barnes* v. *Railroad Companies* (17 Wall. 309) it appeared expressly that the dividends were declared out of the earnings of 1869.

It follows that to the extent of $1,092.16, and the interest thereon, the judgment below was wrong, but in all other respects right. Consequently the judgment below will be reversed, and the cause remanded with instructions to enter a

judgment against the railroad company for . . . $5,9&#x2025; 70
Less . . . . . . . . . . . . . . . 1,092.18
Equal to . . . . . . . . . . . . . . $4,841.54

And interest thereon at six per cent from March 1, 1872.

*So ordered.*